J-A15003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES S. WILLIAMS II | : | |
| | : | |
| Appellant | : | No. 1048 MDA 2017 |

Appeal from the Judgment of Sentence May 25, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003482-2016

BEFORE: PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J. **FILED DECEMBER 20, 2018**

James S. Williams II appeals from the judgment of sentence imposed after his jury trial conviction for simple assault and his bench trial conviction for driving without a license.[1] We affirm.

The facts underlying this appeal are as follows:

On May 15, 2016, while driving . . . , Karen Macintosh observed commotion in the vehicle behind hers. [N.T., Trial, 5/24-25/17, at] 39 . . . As her vehicle approached a stop light, the other vehicle pulled beside hers to make a left hand turn. [*See id*., at] 40. As she looked into the other vehicle, Ms. Macintosh was alarmed to see the male driver, sometimes taking both hands off the wheel, repeatedly striking the female passenger. [*See id*., at] 41-42. The female cowered against the passenger side window, with hands raised. [*See id*., at] 47. Fearing for the passenger's safety, Ms. Macintosh called police. [*See id*., at] 41-42. She followed the car for several minutes until she reached an intersection where the

_____

[1] 18 Pa.C.S.A. § 2701(a)(1) and 75 Pa.C.S.A. § 1501(a), respectively.

police had arrived. [*See id*., at] 44. At no time did she see the passenger strike the driver. [*See id*., at] 47.

Officer Brian Egli of the Lower Paxton Police Department received a dispatch of a domestic assault occurring against a passenger in a blue Volkswagen Jetta. [*See id*., at] 70. Based upon that report, fellow officer Dhenin Brock, driving a separate police vehicle, initiated a traffic stop of the Volkswagen Jetta. [*See id*., at] 71. The driver, [Williams], was belligerent and confrontational toward Officer Brock. [*See id*., at] 78. [Williams] made no statement that the passenger, Sharia Hunter, struck him. [*See id*., at] 79. Officer Brock did not observe any injuries on [Williams]. [*See id*., at] 76-79.

When Officer Egli arrived, Ms. Hunter was in the passenger seat of the Volkswagen Jetta, crying and visibly upset. [*See id*.] Officer Egli and Officer Brock spoke to Ms. Hunter and [Williams] separately. [*See id*.] Officer Egli observed a quarter-sized welt on the right side of Ms. Hunter's head and scratches on her right forearm. [*See id*., at] 72. Officer Egli obtained Ms. Hunter's audio statement. [*See id*.] Ms. Hunter did not state that she was the aggressor. [*See id*., at] 73.

However, at trial, Ms. Hunter and [Williams] testified that [Williams] did not strike her but rather, that the two argued and that he merely pushed her away to regain control of the vehicle as she kicked him. [*See id*., at 56,] 58-59[,] 92-97.

Trial Court Opinion, filed 10/11/17, at 2-3 (some formatting).

When asked if she and Williams were "aggressive[,]" Ms. Hunter testified that she was "more [aggressive] than him." N.T., Trial, 5/24-25/17, at 61. She also stated that, when Williams "pushed" her, she hit her head on the top of the seat belt, where it "connects with the molding of the car," causing an injury. *Id*., at 63-64.

After the evidentiary phase of trial, Williams requested a jury instruction on self-defense, which the trial court denied. *See id*., at 99. The trial court explained its reasoning on the record, as follows:

I don't believe [Williams's] testimony. And what I'm basing that on is an independent witness's testimony who had nothing to gain from this at all. And although we can argue over how many times she may have said he struck or struck at her versus hit her, whatever, I don't believe that the testimony rises to the level to grant that. One, because I don't believe him. Two, because I believe the independent witness.

*Id*., at 100.

During the final jury charge, the trial court gave the following instructions about credibility:

Now, as judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness's testimony and decide whether to believe all, part, or none of that testimony.

The following are some of the factors that you may and should consider when judging the credibility of witnesses and their testimony: Was the witness able to see, hear, or know the things about which they testified? How well could the witness remember and describe those things? Was the ability of the witness to see, hear, know, or remember or describe those things affected by youth, old age, or by any physical, mental, or intellectual deficiency? Did the witness testify in a convincing manner? How did they look, act, and speak while they testified? Was their testimony uncertain, confusing, contradictory, or evasive? Did the witness have any interest in the outcome of the case, any bias, prejudice, or other motive that may have affected their testimony? How well did the witness's testimony square with the other evidence in the case including the testimony of other witnesses? Was it contradicted or supported by the other testimony and evidence? And, finally, did it make sense?

If you believe some part of the testimony of a witness to be inaccurate, you must consider whether that inaccuracy casts doubt about the rest of their testimony. This may depend on whether they have been inaccurate in an important matter or a minor detail and a possible explanation for that. For example, did the witness make an honest mistake, simply forget, or deliberately lie?

While you are judging the credibility of each witness, you are likely to be judging the credibility of other witnesses and evidence. If there is a real irreconcilable conflict, it is up for you to decide which conflicting testimony or evidence you believe. You are the sole judges of credibility and the facts, and you are responsible to give the testimony of every witness and all other evidence whatever credibility and weight you believe it deserves.

Now, the Defendant took the stand as a witness. In considering the Defendant's testimony, you are to follow the general instructions I just gave you for judging the credibility of any witness. You should not disbelieve the Defendant's testimony merely because he's the Defendant. In weighing his testimony, however, you may consider that he has a vital interest in the outcome of the trial. You may take the Defendant's interest into account just as you would the interest of any other witness along with all the other facts and circumstances bearing on credibility in making up your minds what weight his testimony deserves.

Now, you should not decide this case on the basis of which side presented the greater number of witnesses or the greater amount of evidence. Instead, you should decide which witnesses to believe and which evidence to accept on the basis of whether or not the testimony or evidence is believable.

*Id*., at 113-115.

Following his conviction and his sentencing, on June 2, 2017, Williams filed a post-sentence motion requesting a new trial on the basis that the verdict was against the weight of the evidence, which was denied on June 8, 2017. This timely appeal follows.

Williams presents the following issues for our review:

1)  Whether the verdict was against the weight of evidence that it shocked one's sense of justice?

2)  Whether the trial judge abused his discretion by not issuing a self-defense jury instruction as requested by counsel?

Appellant's Brief, at 5.

- 4 -

Williams first contends that "[t]he verdict was so far against the weight of the evidence so as to shock one's sense of justice." *Id*., at 10.[2]

We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. **See id**.

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the factfinder. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> … [A] defendant will only prevail on a challenge to the weight of the evidence when the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

**Commonwealth v. Cramer**, ___ A.3d ___, ___, 2018 WL 4232479, *2-*3 (Pa. Super., filed 9/6/18) (internal citations and quotation marks omitted). ). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

---

[2] Williams preserved his challenge to the weight of the evidence in his post-sentence motion for a new trial. **See** Pa.R.Crim.P. 607(A)(3).

Although Williams does not specify which verdict he is challenging, we presume that he is only contesting his simple assault conviction, because his brief to this court makes no mention of his conviction for driving without a license. The jury convicted Williams of simple assault pursuant to 18 Pa.C.S.A. § 2701(a)(1): "[A] person is guilty of assault if he attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]"

The trial court, in its opinion, disposed of Williams's weight challenge as follows:

> The weight of the evidence well supports the jury's findings that [Williams] attempted to cause or intentionally, knowingly or recklessly caused, bodily injury to Ms. Hunter. The jury accepted the testimony of the independent eye-witness, Ms. Macintosh, that [Williams] repeatedly struck Ms. Hunter as she cowered in the passenger seat. Ms. Hunter's statements at the scene and the officers' observations of a welt on her head and scratches on her arm support the jury's conclusion that [Williams] struck her and caused injury.
>
> The jury was free to reject the trial testimony of [Williams] and Ms. Hunter, as a story apparently created after the two resolved their differences.

Trial Court Opinion, filed 10/11/17, at 4.

As such, the trial court concluded that the verdict did not shock its sense of justice. Our review of the record does not demonstrate the court abused its discretion in finding the jury's verdict reasonable. Therefore, Williams's first issue on appeal merits no relief.

Next, Williams argues that "[t]he trial court abused its discretion in denying [his] request for a self-defense jury instruction after testimony was heard that the victim struck the [him] first[,]" including testimony from Ms.

Hunter that she argued with him and that she was more aggressive than him. Appellant's Brief, at 15-16 (citing N.T., Trial, 5/24-25/17, at 56, 61). Williams continues that "[t]he issue of self-defense is not subject to the opinion of the trial court[,]" including that "the personal opinion of credibility by a trial judge is not the determinative factor in the reading of a self-defense instruction." *Id*., at 15, 17. And he concludes that "the jury, not the judge, [should] have decided whether [he] acted in self-defense." *Id*., at 18.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Baker***, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted; brackets in original).

When requested by a defendant, a self-defense instruction must be given if there is any evidence to support it. ***See***, ***e.g.***, ***Commonwealth v. Mayfield***, 585 A.2d 1069, 1070-1071 (Pa. Super. 1991) (*en banc*).

Here, both Williams and the victim, Ms. Hunter, testified that Williams acted in self-defense when attacked by Ms. Hunter. ***See*** N.T., Trial, 5/24-25/17, at 56, 58-59, 61, 63-64, 92-97. So, there was evidence to support Williams's claim that he acted in self-defense. Thus, the trial court erred when it refused to give Williams's requested self-defense charge.

And, a trial court should not make credibility determinations when deciding whether to give an instruction on self-defense, because any such determination would usurp the jury's role as fact-finder. ***See Mayfield***, 585

A.2d at 1071 (stating it is improper to refuse to give self-defense instruction, "even though the evidence of self-defense may appear to the trial court as not credible").

Ergo, the reason given by the trial court on the record during trial for denying Williams's request for a self-defense instruction—that the court did not find his testimony to be credible but, instead, believed Ms. Macintosh's testimony—was inappropriate. *See* N.T., Trial, 5/24-25/17, at 100.

While Williams is correct that the trial court should have given his requested charge and should not have based its denial on its own assessment of witnesses' credibility, a court's "refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." ***Commonwealth v. Williams***, 176 A.3d 298, 314 (Pa. Super. 2017), *appeal denied*, 187 A.3d 908 (Pa. 2018).

The trial court gave thorough and extensive instructions to the jurors about their roles as "sole judges of the credibility of witnesses," including that they were free to accept or to reject any of the witnesses' accounts and to "judge the truthfulness and accuracy of each witness's testimony[.]" N.T., Trial, 5/24-25/17, at 113. Jurors were also instructed that they alone must "decide whether to believe all, part, or none" of each witness's testimony and were given specific instructions on how to assess Williams's credibility. ***Id***., at 113-15.

Pursuant to these detailed instructions about evaluating the credibility of witnesses, the jury understood that it could consider the testimony of each

witness, including the testimony of Williams and of Ms. Hunter, and whether there were inconsistencies amongst them. The trial court therefore instructed the jury that it could accept or reject Williams's and Ms. Hunter's assertions, including their claims that Williams acted in self-defense. Williams thus suffered no prejudice from the trial court's refusal to give the requested self-defense charge, and, accordingly, we will not reverse the judgement of sentence.

Based on the foregoing, Williams is not entitled to relief on either of his issues.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2018